IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM STRATTON,<br><br>        Plaintiff,<br><br>        v.<br><br>MERRILL LYNCH PIERCE FENNER &<br>SMITH, INC.,<br><br>        Defendant. | Case No. 1:11-cv-8011 |

**DEFENDANT'S MEMORANDUM OPPOSING REMAND TO STATE COURT**

Plaintiff William Stratton ("Stratton") believes this case should be remanded back to state court because he only asks for $70,000 in damages. But the Illinois Human Rights Act provides for punitive damages and attorneys' fees, which easily provide the additional $5,001 needed to satisfy the amount in controversy requirement. This case is also properly in federal court because Stratton's claim arises under federal law which completely preempts his state law claim. Accordingly, Plaintiff's Motion to Remand should be denied.

**I.**     **THIS COURT HAS DIVERSITY JURISDICTION UNDER 28 U.S.C. § 1332.**

Stratton argues that the amount in controversy is below the $75,000 threshold because he only asks for $20,000 in back pay and $50,000 in compensatory damages. (Dkt. #9, ¶¶ 4-5.) But under Illinois law he is not limited to the amount he seeks in his complaint. *Barbers, Hairstyling for Men and Women, Inc. v. Bishop*, 132 F.3d 1203, 1205 (7th Cir. 1997). Just as the Southern District of Illinois recently found a prayer for $74,999 in damages insufficient to prevent diversity jurisdiction, this Court easily can and should determine that the amount in controversy here well exceeds $75,000. *See Hunt v. Davita, Inc.*, No. 10-602-GPM, 2010 WL 5058372, at *2 (S.D. Ill. Dec. 6, 2010).

In a removal case, the relevant date for determining the amount in controversy is not the filing of the complaint as Stratton suggests (Dkt. #9, ¶ 6), but the date of removal. *Oshana v. Coca-Cola, Inc.*, 472 F.3d 506, 510-511 (7th Cir. 2006) (citing *BEM I, L.L.C. v. Antrhopologie, Inc.*, 301 F.3d 548, 552 (7th Cir. 2002)). The amount in controversy comprises actual, compensatory, and punitive damages, as well as attorneys' fees if allowable. *See Oshana*, 472 F.3d at 512.

### A. Punitive Damages

Punitive damages is a significant key to this case: "[i]f punitive damages are available, subject matter jurisdiction exists unless it is 'legally certain' that the plaintiff will be unable to recover the requisite jurisdictional amount." *LM Ins. Corp. v. Spaulding Enterprises, Inc.*, 533 F.3d 542, 551 (7th Cir. 2008).

Under the Illinois Human Rights Act ("IHRA"), punitive damages may be awarded for any civil rights violation. 775 Ill. Comp. Stat. 5/10-102(C)(1). A potential punitive damages award is considered as part of the amount in controversy even where the complaint is silent on punitive damages. *Oshana*, 472 F.3d at 512 (including punitive damages when calculating the amount in controversy, even where "the complaint was silent about punitive damages," because they were available under the relevant Illinois statute); *see also Bishop*, 132 F.3d at 1205 (like Fed. R. Civ. P. 54(c), Illinois law allows "parties to recover more than their pleadings seek") (citing 735 Ill. Comp. Stat. 5/2-604). Accordingly, because punitive damages are available under the IHRA, Stratton cannot demonstrate with legal certainty that he will be unable to recover more than $75,000. *See LM Ins.*, 533 F.3d at 551. Because he already prays for $70,000 in back

pay and compensatory damages, even an unusually small punitive damages award would push the total over the threshold.[1]

The district court in *Hunt* addressed a situation similar to this case. There Hunt brought retaliatory discharge claims and argued that the amount in controversy was under $75,000 because she only prayed for $74,999 in damages, requiring a remand back to state court. 2010 WL 5058372, at *1. In order to calculate the amount in controversy, the Court noted that punitive damages were available for such a claim and used "an award of punitive damages in a ratio of twice [plaintiff's] actual damages" for its calculation. *Id.* at *2. A two-to-one ratio of punitive to actual damages is certainly well within reason, and if anything might be a conservative estimate of the amount of punitive damages Stratton stands to receive if he prevails on his IHRA claim. To reach the $75,000 threshold here, punitive damages need be only a small fraction—about seven percent—of Stratton's claimed damages. But realistically any punitive damage award will at least equal, and more likely exceed, the amount of actual damages. Under that realistic appraisal, Stratton stands to recover total damages in the $140,000 to $210,000 range.[2]

### B. Attorneys' Fees

Even if the availability of punitive damages were not enough on its own—though it clearly is—the IHRA also allows attorneys' fee awards for prevailing parties, 775 Ill. Comp. Stat. 5/10-102(C)(2), which easily lifts the amount in controversy over the $75,000 threshold. At the time of removal Stratton's counsel had done the research and other work necessary to draft

---

[1] Merrill Lynch surmises that as this case progresses and potentially proceeds to trial, Stratton will obviously assert a damages figure for beyond that which he had initially alleged in what was an obvious effort to avoid removal.

[2] For an Illinois discussion of ratios of punitive damages to actual damages, *see Int'l Union of Operating Engineers, Local 150 v. Lowe Excavating Co.*, 870 N.E.2d 303, 320-325 (Ill. 2006) (reducing a 49-to-1 punitive damages award to an 11-to-1 ratio where defendant's conduct was "minimally reprehensible").

and file the state court complaint, which is significant legal work of itself; but counsel had also represented Stratton in the underlying administrative action before the Illinois Human Rights Commission.[3] The IHRA provides for recovery of attorneys' fees for "maintaining [an] action before the Department, the Commission and in any judicial review and judicial enforcement proceedings." 775 Ill. Comp. Stat. 5/8A-104(G). Accordingly, Stratton stands to recover attorneys' fees for both the research and drafting work that went into filing his state court complaint, as well as the hours his attorney spent representing him at the Illinois Human Rights Commission. Assuming a modest rate of $200 an hour, Stratton's attorney would only need to have spent 25 hours on those tasks to reach $5,001 in fees and push the amount in controversy over the threshold.[4]

### C. Summary

Potential punitive damages and attorneys' fees undoubtedly supply the additional $5,000 above Stratton's $70,000 claimed damages needed to reach the jurisdictional threshold. The Seventh Circuit has held that "a good faith estimate of the stakes is acceptable [for the defendant to show the amount in controversy] if it is plausible and supported by a preponderance of the evidence." *Oshana*, 472 F.3d at 511. Here, that standard is easily met because the additional $5,001 needed to reach $75,001 is amply supplied by potential punitive damages and attorneys' fees. Stratton "can defeat jurisdiction only if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *See id.* (internal quotation marks and citation omitted). Stratton cannot meet that exacting standard. Nor can Stratton defeat federal jurisdiction by

---

[3] An individual may seek relief through an administrative forum by filing a complaint with the Illinois Human Rights Commission before filing suit under the IHRA. *See* 775 ILCS 5/10-102(3). In this case, Stratton elected–with the benefit of counsel–to initially file an administrative complaint with the Commission before pursuing relief in state court.

[4] Even if Stratton's attorney alternatively took this case solely on a contingency fee basis, the additional $5,001 he says is lacking would be supplied by a mere seven percent contingency fee; and it is simply not realistic that a contingency arrangement would be that minimal.

agreeing to limit his recovery to below $75,000 because "it is well settled that post-removal disclaimers of a jurisdictionally-sufficient recovery are ineffective to oust federal jurisdiction." *Hunt*, 2010 WL 5058372, at *2 (citing several Seventh Circuit cases).[5]

Stratton's civil rights claim under the Illinois Human Rights Act has put in controversy the $70,000 in damages he claims, as well as attorneys' fees and punitive damages. Those amounts added together easily exceed $75,000. That amount in controversy, plus the complete diversity of the parties that Stratton acknowledges (Dkt. #9, ¶ 4), gives this Court subject matter jurisdiction under 28 U.S.C. § 1332. On this basis alone the Court can—and should—deny Stratton's motion to remand.

**II.     BECAUSE THE FEDERAL DEPOSIT INSURANCE ACT COMPLETELY PREEMPTS ILLINOIS LAW, THIS COURT HAS FEDERAL QUESTION JURISDICTION UNDER 28 U.S.C. § 1331.**

Beyond diversity jurisdiction, the Court has federal question jurisdiction because 12 U.S.C. § 1829, part of the Federal Deposit Insurance Act ("FDIA"), completely preempts 775 Ill. Comp. Stat. 5/2-103. Complete preemption provides a basis for federal question jurisdiction where "'Congress clearly intended completely to replace state law with federal law and create a federal forum.'" *In re Repository Technologies, Inc.*, 601 F.3d 710, 723 (7th Cir. 2010) (quoting *Adkins v. Illinois Cent. R. Co.*, 326 F.3d 825, 835 (7th Cir. 2003)). Here, because Merrill Lynch is a subsidiary of Bank of America, N.A., Merrill Lynch is subject to federal banking laws, such as the FDIA. Through the FDIA and other acts, Congress has created a federal regulatory regime governing national banks that completely preempts state laws in the field.

---

[5] As noted by the court in *Hunt*, a plaintiff—like Stratton here—who pleads a specific amount under the $75,000 threshold must at filing give a binding stipulation or affidavit with his or her complaint that he or she will forego a recovery in excess of the jurisdictional minimum. *Hunt*, 2010 WL 5058372, at *2. Stratton did not do so here, nor has Stratton indicated at any point that he would ever forego seeking in excess of the $75,000 minimum amount.

In *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 11 (2003), the Supreme Court held that §§ 85 and 86 of the National Bank Act completely preempted state usury laws as applied to national banks. In doing so, the Court recognized "the special nature of federally chartered banks" which fall under a broad scheme of federal supervision because they need "protection from 'possible unfriendly State legislation.'" *Id.* at 10 (quoting *Tiffany v. Nat'l Bank of Mo.*, 85 U.S. 409, 412 (1873)). Given that "special nature" and the strong history of federal oversight of national banks, the Court also noted that the "same federal interest that protected national banks from the state taxation that Chief Justice Marshall characterized as the 'power to destroy,' [*McCulloch v. Maryland*, 17 U.S. 316 (1819)], supports the established interpretation of §§ 85 and 86 that gives those provisions the requisite pre-emptive force to provide removal jurisdiction." *Anderson*, 539 U.S. at 11. Put another way, part of the reason federal law completely preempted state law in *Anderson* was that national banks are peculiarly federal creatures operating under primarily federal oversight.

In addition to the National Bank Act, courts have also held that the FDIA itself completely preempts state law and supports federal question jurisdiction even where the plaintiff makes only state claims. In *Discover Bank v. Vaden*, the Fourth Circuit held that § 27 of the FDIA completely preempted conflicted state usury laws. 489 F.3d 594, 606-607 (4th Cir. 2007), *rev'd on other grounds*, 556 U.S. 49 (2009). Like the Supreme Court in *Anderson*, the Fourth Circuit in *Vaden* relied in part on the special relationship between federal law and national banks, noting that with the FDIA "Congress intended to 'allow[ ] competitive equity among financial institutions, and reaffirm[ ] the principle that institutions offering similar products should be subject to similar rules.'" *Vaden*, 489 F.3d at 604 (citing 126 Cong. Rec. 6,908 (1980) (Statement of Sen. Bumpers)). In that light, the Fourth Circuit agreed with the Third Circuit,

which "compared the [National Bank Act] to the FDIA and found that both statutes completely preempt state-law usury claims." *Vaden*, 489 F.3d at 605 (citing *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 295 (3d Cir. 2005)). Although this case concerns a different provision of the FDIA, the same result should obtain.

Section 1829 is part of a wide-ranging federal regulatory regime, and it clearly conflicts with and overrides contrary state laws such as 775 Ill. Comp. Stat. 5/2-103. Congress has so occupied the field of national bank regulation that any claim against a national bank on an issue addressed under federal law, as § 1829 does here, necessarily arises under federal law. Even if the Court is unsatisfied that the amount in controversy supports diversity jurisdiction, Stratton's motion to remand should still be denied because his claim arises under federal law.

**III.	CONCLUSION**

Stratton's request for $70,000 in actual damages, coupled with potential punitive damages and attorneys' fees allowed under the IHRA, easily meets the amount in controversy requirement; and at this point Stratton cannot show with legal certainty that he is unable to recover less than $75,000. But diversity jurisdiction notwithstanding, federal question jurisdiction still exists because the FDIA completely preempts the Illinois law under which Stratton proceeds.

WHEREFORE, Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated respectfully requests that the Court deny Stratton's motion to remand this action to state court.

Date: December 15, 2011　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　By:　/s/ *Angela M. Tsevis*
　　　　　　　　　　　　　　　　　　　　　　　　　　One of the attorneys for defendant
　　　　　　　　　　　　　　　　　　　　　　　　　　Merrill Lynch, Pierce, Fenner &
　　　　　　　　　　　　　　　　　　　　　　　　　　　Smith Incorporated

Jack D. Rowe
jrowe@lathropgage.com
Angela M. Tsevis
atsevis@lathropgage.com
Lathrop & Gage LLP
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2684
Telephone:  (816) 292-2000
Telecopier:  (816) 292-2001

Bryan Clark
bclark@lathropgage.com
Lathrop & Gage LLP
100 N. Riverside Plaza, Suite 2100
Chicago, Illinois  60606
Telephone: (312) 920-3300
Telecopier:  (312) 920-3301

Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

　　　　This is to certify that on this 15th day of December, 2011, a copy of the foregoing Defendant's Memorandum Opposing Remand to State Court was served via U.S. Mail, postage prepaid, on the following counsel of record:

　　　　Marshall J. Burt, Esq.
　　　　Andrew J. Cohen, Esq.
　　　　77 West Washington Street, Suite 1900
　　　　Chicago, IL  60602

　　　　Attorney for Plaintiff

　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Angela M. Tsevis*
　　　　　　　　　　　　　　　　　　　　　　　　　An Attorney for Defendant