IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM STRATTON, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) 11 C 8011 ) ) |
| MERRILL LYNCH PIERCE FENNER & SMITH, INC., | ) ) ) |
|     Defendant. | ) Hon. Charles R. Norgle ) ) |

**OPINION AND ORDER**

Before the Court is Plaintiff William Stratton's ("Stratton") Motion to Remand Action to State Court. For the following reasons, the motion is granted.

**I. BACKGROUND**

Stratton brought this action in the Circuit Court of Cook County, alleging that Defendant Merrill Lynch Pierce Fenner & Smith, Inc. ("Merrill Lynch") violated the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/2-103, when it inquired into his arrest record and used that record as a basis for terminating his employment. Stratton claims to have suffered $20,000 in lost wages and $50,000 in "compensatory damages, including embarrassment, humiliation and other emotional distress." Compl. ¶¶ 22-23. Stratton also seeks reinstatement as well as costs, which include reasonable attorney's fees under the IHRA. See 775 ILCS 5/8A-104(G).

Merrill Lynch filed a timely notice of removal on November 10, 2011. Merrill Lynch contends that there is federal jurisdiction pursuant to 28 U.S.C. §1332 because there is complete diversity and the amount in controversy exceeds $75,000. Alternatively, Merrill Lynch contends that there is federal jurisdiction pursuant to 28

U.S.C. § 1331 because Stratton's IHRA claim is completely preempted by Section 19 of the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1829.

Stratton filed the instant motion to remand on November 22, 2011, arguing that the amount in controversy is less than $75,000 and that § 5/2-103 of the IHRA is not completely preempted by § 1829. The motion to remand is fully briefed and before the Court.

## II. DISCUSSION

### A. Stratton's Motion to Remand

#### 1. Amount in Controversy

The Court shall have original jurisdiction when there is complete diversity and when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." 28 U.S.C. § 1332(a). The amount in controversy "is the amount required to satisfy the plaintiff's demands in full" and is measured "in the event of removal, on the day the suit was removed." Oshana v. Coca-Cola Co., 472 F.3d 506, 510-11 (7th Cir. 2006) (citations omitted). For a defendant, establishing the amount in controversy "is easier said than done when the plaintiff, the master of the complaint, does not want to be in federal court and provides little information about the value of her claims." Id. at 511. Courts address this problem with a burden-shifting mechanism. A defendant's "good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." Id.; see also Blomberg v. Service Corp. Int'l., 639 F.3d 761, 763 (7th Cir. 2011) ("A good-faith estimate is acceptable if it is plausible and adequately supported by the evidence."). Once a defendant has made such a showing, "the plaintiff can defeat jurisdiction only if 'it appears to a legal certainty that the claim is

2

really for less than the jurisdictional amount.'" Oshana, 472 F.3d at 511 (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." Schur v. L.A. Weight Loss Ctrs., Inc., 577 F.3d 752, 758 (7th Cir. 2009) (citing Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993)); see also St. Paul Mercury Indem. Co., 303 U.S. at 294 ("If [the plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.").

The parties agree that the amount in controversy is at least equal to the $70,000 in actual damages claimed by Stratton. Stratton argues that, because he specifically alleges only $70,000 in damages, the amount in controversy does not exceed $75,000. Merrill Lynch argues that punitive damages and attorney's fees "easily provide the additional $5,001 needed to satisfy the amount in controversy requirement." Def.'s Mem. Opposing Remand to State Court 1. Merrill Lynch does not argue that Stratton's actual damages claims may themselves exceed $75,000. There is no dispute that that there is complete diversity of citizenship.

a. **Punitive Damages**

Merrill Lynch first argues that punitive damages raise the amount in controversy above the $75,000 threshold. When punitive damages are relied upon to satisfy the amount in controversy, the Court must first determine whether they are recoverable under the state law at issue. LM Ins. Corp. v. Spaulding Enters. Inc., 533 F.3d 542, 551 (7th

Cir. 2008). "If punitive damages are available, subject matter jurisdiction exists unless it is 'legally certain' that the plaintiff will be unable to recover the requisite jurisdictional amount." Id. (quoting Del Vecchio v. Conseco, Inc., 230 F.3d 974, 978 (7th Cir. 2000)).

Citing 775 ILCS 5/10-102(C)(1), Merril Lynch argues that "punitive damages may be awarded for any civil rights violation" under the IHRA. Def.'s Mem. Opposing Remand to State Court 2. Not so. While § 5/10-102(C)(1) provides for punitive damages, Merrill Lynch fails to note that it applies "solely to civil actions arising under Article 3 of this Act." 775 ILCS 5/10-101. Article 3 applies to real estate transactions. This case arises under Article 2, which applies to employment.

Punitive damages are not available under Article 2. As the Illinois Supreme Court explained, the remedies available under Article 2 "are extensive" and include, among other things: actual damages, cease and desist orders, hiring, reinstatement, promotion, backpay, and fringe benefits. Baker v. Miller, 636 N.E.2d 551, 557 (Ill. 1994) (citing 775 ILCS 5/8A-104). "Noticeably absent is any provision for punitive damages." Id.; see also Page v. City of Chi., 701 N.E.2d 218, 228 (Ill. App. Ct. 1998) (noting that "the Human Rights Act expressly limits its remedies to the relief identified within [§ 5/8A-104]" and that this section "does not specifically provide a punitive damage remedy"). Because punitive damages are not available under Article 2, the Court does not consider them as part of the amount in controversy.

**b. Attorney's Fees**

Merrill Lynch next argues that Stratton's pre-removal attorney's fees equal at least $5,001, which brings the amount in controversy above the $75,000 threshold.[1] As set

---

[1] Section 1332(a) provides that the amount in controversy must exceed $75,000 "exclusive of interests and costs." While it is true that the IHRA provides attorney's fees as part of costs, see

4

forth above, Merrill Lynch "must establish any disputed aspect of diversity jurisdiction by offering evidence which proves to a reasonable probability that jurisdiction exists." Smith v. Am. Gen. Life & Acc. Ins. Co., 337 F.3d 888, 892 (7th Cir. 2003) (quotation omitted). This requires Merrill Lynch to "come forward with competent proof that [it has] satisfied the jurisdictional threshold and not simply point to the theoretical possibility of recovery for certain categories of damages." McMillian v. Sheraton Chi. Hotel & Towers, 567 F.3d 839, 845 (7th Cir. 2009). Indeed, a defendant's "good-faith estimate of the stakes" is only acceptable if it is "plausible and supported by a preponderance of the evidence." Oshana, 472 F.3d at 511 (emphasis added).

In its response to Stratton's motion to remand, Merrill Lynch attempts to satisfy this burden by stating that:

> Stratton stands to recover attorneys' fees for both the research and drafting work that went into filing his state court complaint, as well as the hours his attorney spent representing him at the Illinois Human Rights Commission. Assuming a modest rate of $200 an hour, Stratton's attorney would only need to have spent 25 hours on those tasks to reach $5,001 in fees and push the amount in controversy over the threshold.

Def.'s Mem. Opposing Remand to State Court 4. While Merrill Lynch's assumptions regarding billing rates and hours worked are plausible, they do not rise to the level of competent proof. See, e.g., Am. Econ. Ins. Co. v. T.J. Copy Prods., Inc., No. 04 C 107, 2004 WL 842510, at *2-3 (N.D. Ill. Apr. 20, 2004) ("[T]he assertions as to the amount of attorneys' fees potentially at issue in the underlying action are vague generalizations

---

§ 5/8A-104(G) (providing for payment "to the complainant [of] all or a portion of the costs of maintaining the action, including reasonable attorney fees"), the Seventh Circuit has nevertheless held that attorney's fees may be considered in determining the jurisdictional amount even when the state statute permitting attorney's fees labels the fees as costs, see Hart v. Schering-Plough Corp., 253 F.3d 272, 274 (7th Cir. 2001); Ross v. Inter Ocean Ins. Co., 693 F.2d 659, 661 (7th Cir. 1982), abrogated on other grounds by Hart, 253 F.3d at 274. The Court therefore considers attorney's fees in the amount in controversy analysis.

which are not supported by any specific facts . . . this type of conclusory assertion is not competent proof that the amount in controversy exceeds $75,000."). Furthermore, although not his burden to disprove jurisdiction, Stratton states in his reply brief that his attorney's fees do not exceed $4,300:

> Plaintiff's counsel has spent 14.20 hours of time up to the date the action was removed to federal court and has a billing rate of $300. The time included reviewing the Human Rights Act, drafting a demand letter to Merrill Lynch, preparing an 8 paragraph discrimination charge, attending a 2 1/2 hour fact-finding conference and preparing the Circuit Court Complaint which essentially mimicked the prior discrimination charge.

Pl.'s Reply in Support of Mot. to Remand 4, n.2. That Stratton may seek close to $75,000 is not enough for federal jurisdiction; under § 1332(a), the amount in controversy must exceed $75,000. As set forth above, the Court should interpret the removal statute narrowly and resolve any doubt in favor of plaintiff's choice of forum in state court. Schur, 577 F.3d at 758. Simply put, Merrill Lynch has not come forward with any proof, let alone "competent proof," to suggest that the fees incurred at the time of removal would carry the amount in controversy over the jurisdictional hurdle.

### 2. Complete Preemption

Alternatively, Merrill Lynch contends that there is federal question jurisdiction because § 1829, part of the FDIA, completely preempts § 5/2-103. Section 1829 provides, in relevant part:

> (A) any person who has been <u>convicted</u> of any criminal offense involving dishonesty or a breach of trust or money laundering, or has agreed to enter into a pretrial diversion or similar program in connection with a prosecution for such offense, may not—
>     (i) become, or continue as, an institution-affiliated party with respect to any insured depository institution;

(emphasis added). Section 5/2-103 provides, in relevant part:

> Arrest Record.
> (A) Unless otherwise authorized by law, it is a civil rights violation for any employer, employment agency or labor organization to inquire into or to use the fact of an <u>arrest</u> . . . as a basis to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment.
> (B) The prohibition against the use of the fact of an arrest contained in this Section shall <u>not</u> be construed to prohibit an employer, employment agency, or labor organization from obtaining or using <u>other information</u> which indicates that a person <u>actually engaged</u> in the conduct for which he or she was arrested.

(emphasis added).

"Complete preemption 'confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim.'" In re Repository Techs., Inc., 601 F.3d 710, 722 (7th Cir. 2010) (quoting Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund, 538 F.3d 594, 596 (7th Cir. 2008)). This narrow jurisdictional doctrine "applies to subjects over which federal law is so pervasive that it is impossible to make out a state-law claim, no matter how careful the pleading." Hughes v. United Air Lines, Inc., 634 F.3d 391, 393 (7th Cir. 2011). Complete preemption is not a defense but rather "means that the claim itself arises under federal law." Id. (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)); see also Wis. Interscholastic Athletic Ass'n v. Gannett Co., 658 F.3d 614, 620 (7th Cir. 2011) ("[T]he phrase 'complete preemption' is a misnomer, having nothing to do with preemption and everything to do with federal occupation of a field.").[2]

---

[2] By contrast, ordinary preemption "is a federal defense to a plaintiff's state-law claim and thus cannot serve as a basis for the federal court's power under § 1331." Wisc. Interscholastic Athletic Ass'n, 658 F.3d at 620; see also Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987) ("[A] case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption.").

To determine whether a claim is subject to complete preemption, the Court asks whether "Congress clearly intended completely to replace state law with federal law and create a federal forum." In re Repository Techs., Inc., 601 F.3d at 723 (quotation omitted). "A prerequisite to complete preemption is identifying a federal cause of action that includes the same ingredients as the state claim and provides some recovery." Id. (quotation omitted).

Merrill Lynch contends that § 1829 "is part of a wide-ranging federal regulatory regime [that] . . . clearly conflicts with and overrides contrary state laws such as 775 Ill. Comp. Stat. 5/2-103." Def.'s Mem. Opposing Remand to State Court 7. In support, Merrill Lynch cites to cases holding that the National Bank Act and the FDIA completely preempt state usury laws. See id. 6-7. From these usury law cases, Merrill Lynch concludes that "Congress has so occupied the field of national bank regulation that any claim against a national bank on an issue addressed under federal law, as § 1829 does here, necessarily arises under federal law." Id. 7. This argument is entirely without merit.

Nothing in § 1829 demonstrates a Congressional intent to completely preempt state civil rights employment laws, and Merrill Lynch fails to offer any analysis in support of this contention. Instead, Merrill Lynch simply relies upon the above mentioned state usury law cases—making no effort to explain how such cases might apply to this civil rights case—and states in conclusory fashion that there is complete preemption. Merrill Lynch "must do more than offer possible basis for removal and hope that the court will do its own independent research and support [its] speculative conclusions." Lawrence v. Biotronik, Inc., No. 04 C 1876, 2004 WL 1881783, at *3 (N.D. Ill. Aug. 19, 2004).

Moreover, Merrill Lynch fails to satisfy a basic prerequisite to complete preemption—the identification of "a federal cause of action that includes the same ingredients as the state claim." In re Repository Techs., Inc., 601 F.3d at 723 (quotation omitted). Merrill Lynch contends that § 1829 "clearly conflicts with and overrides" § 5/2–103. Def.'s Mem. Opposing Remand to State Court 7. Merrill Lynch is mixing apples and oranges. Whereas § 1829 prohibits persons <u>convicted</u> of certain criminal offenses from institutional affiliation with any insured depository institution, § 5/2-103 prohibits an employer from using "the fact of an <u>arrest</u>" as a basis to refuse to hire or to discharge an employee. Indeed, the Illinois law states explicitly that it "does not extend to prior convictions, which may be used 'in evaluating the qualifications and character of an employee or a prospective employee.'" <u>Jansen v. Packaging Corp. of Am.</u>, 123 F.3d 490, 545 n.35 (7th Cir. 1997) (quoting 775 ILCS 5/2-103); <u>see also</u> <u>Beard v. Sprint Spectrum, LP</u>, 833 N.E.2d 449, 453 (Ill. App. Ct. 2005) ("In enacting 775 ILCS 5/2-103(A), the intent of the legislature was to prevent inquiry into mere charges or allegations of criminal behavior but to allow inquiry where criminal conduct has been proven."). These statutes do not involve the "same ingredients" and they are plainly not in conflict—§ 1829 says nothing about arrest records and § 5/2-103 explicitly allows inquiry into convictions. There being no basis for complete preemption, the Court does not have federal question jurisdiction in this case.

## III. CONCLUSION

For the foregoing reasons, there is no basis for federal subject matter jurisdiction in this case. Accordingly, Stratton's motion to remand is granted. The Clerk is directed to remand this case to the Circuit Court of Cook County.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: April 25, 2012